IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| ALPHONSO LORENZO BURLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 120-076 |
| ) | (Formerly CR 118-071) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at FCI Coleman Low in Coleman, Florida, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.    BACKGROUND**

    **A.    Indictment**

On December 7, 2018, a grand jury in the Southern District of Georgia charged Petitioner and his wife, Lequita Fiero Brady, in a four-count indictment. United States v. Burley, CR 118-071, doc. no. 3 (S.D. Ga. Dec. 7, 2018) (hereinafter "CR 118-071"). Counts One and Two, respectively, charged Petitioner and Ms. Brady with (1) possession with intent to distribute cocaine and marijuana under 21 U.S.C. § 841(a)(1); and (2) possession with intent to distribute methamphetamine under the same code section. Id. at 1-2. Counts Three

and Four, respectively, charged Petitioner with (1) felon in possession of firearms under 18 U.S.C. § 922(g)(1); and (2) possession of firearms in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c).  Id. at 3-4.  On December 14, 2018, Petitioner pled not guilty.  Id., doc. no. 23.  Petitioner retained Travers W. Chance as counsel.  Id., doc. nos. 22, 26.

### B. Plea Agreement

By written plea agreement dated January 31, 2019, Petitioner agreed to plead guilty to Count Two in exchange for dismissal of Counts One, Three, and Four.  Id., doc. no. 37, ("Plea Agreement"), pp. 3-4, 9.  The agreement identified the elements of Count Two as: "(1) that Defendant possessed with intent to distribute 500 grams or more of methamphetamine (mixture); and (2) that the Defendant did so knowingly and intentionally."  Id. at 1.  In exchange for the guilty plea, the government agreed to dismiss the remaining counts, not object to a recommendation for a two-point acceptance of responsibility reduction, and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id. at 3-4.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea: "[o]n or about August 22, 2018, in Richmond County, within the Southern District of Georgia, the defendant, **ALPHONSO LORENZO BURLEY**, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance."  Id. at 1-2.  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 9.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct

appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum; (2) sentenced him above the advisory Sentencing Guidelines range; or (3) the government appealed the sentence. Id. at 6. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. By signing the Plea Agreement, Petitioner additionally attested Mr. Chance had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7.

### C. Guilty Plea

On March 14, 2019, Petitioner appeared with counsel and pled guilty to Count Two. Id., doc. nos. 35-37. Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and he clearly understood where he was and why he was in court. Id., doc. no. 57 ("Rule 11 Tr."), pp. 3, 5. Judge Hall reviewed the indictment, with a particular focus on the possession of methamphetamine charge to which the guilty plea applied. Id. at 5-6, 13. Petitioner confirmed he had as much time as he needed to review the charges with Mr. Chance. Id. at 6-7. Petitioner also testified under oath he had read and reviewed the Plea Agreement with counsel before signing it. Id. at 8.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 7-8. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and

3

cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall also reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  Id. at 9.  Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 9-10.

Judge Hall reviewed the statutory minimum penalty of not less than ten years and the statutory maximum penalty of life in prison.  Id. at 10.  When asked, Petitioner confirmed he understood the possible imprisonment penalty, as well as the potential $10,000,000 fine and not less than five years of supervised release after completion of the term of imprisonment.  Id.  Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition.  Id. at 11.  Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI.  Id.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 12-13.  Petitioner stated he understood the sentencing process described by Judge Hall.  Id. at 13.  Judge Hall asked Petitioner whether anyone had promised him he would receive a particular sentence, to which Petitioner responded, "No, sir."  Id.

Next, Judge Hall heard the factual basis for Petitioner's guilty plea from Robert Stewart, FBI Special Agent with the Safe Streets Gang Task Force.  Id. at 14-16.  SA Stewart testified that, on August 22, 2018, the Richmond County Sheriff's Office executed a search warrant at Petitioner's residence, located at 3217 Hampton Circle, Augusta, Georgia.  Id. at 14-15.  Upon entering the residence, officers detained Petitioner in the dining room and Mrs.

Brady in the kitchen. Id. at 15. The task force found approximately 770 grams of methamphetamine separated into thirty-two bags, approximately one pound of marijuana separated into approximately twenty bags, approximately eight grams of cocaine, clear bags, a digital scale, and $2,800 in cash. Id. Officers also located a Glock, Model 31 and a Smith & Wesson .40 caliber pistol, both of which were chambered, in the master bedroom. Id. Five baggies of methamphetamine were located in Petitioner's master bedroom, and the remaining twenty-seven baggies were in the garage. Id. at 16. The remaining baggies of marijuana and cocaine were spread throughout Petitioner's household, including the master bedroom. Id. SA Stewart testified the baggies and scale were indicative of someone who distributes or sells drugs. Id. at 15.

Petitioner stated to Judge Hall the information provided by SA Stewart and contained in Count Two of the indictment was true, that on August 22, 2018 in Richmond County Petitioner knowingly and intentionally possessed with intent to distribute 500 grams or more of methamphetamine, and he was guilty of, and wanted to plead guilty to, the drug possession charge. Id. at 17.

Judge Hall then summarized the proceedings as follows:

> With the entry of the signed plea into the record of this hearing, the Court now finds that [Petitioner] . . . is competent and fully understands the charge against him. There is a factual basis supporting his plea of guilty on this charge. He knows the statutory punishment including the statutory minimum that could be imposed on this charge and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that [Petitioner's] decision to plead guilty this morning was voluntary, knowing, and not as a result of any force, pressure, threats or promises other than the promises made by the Government in the Plea Agreement. Therefore, the plea is accepted and [Petitioner] is now adjudged guilty of count two of the Indictment based upon that plea.

Id. at 17-18.

### D. Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at 29, Criminal History Category at I, and guidelines imprisonment range at 120 months because the statutory minimum of ten years was greater than the 87 to 108 months range. PSI ¶¶ 22, 28, 53. The base offense level of thirty was increased by two because Petitioner possessed two firearms in his residence while in possession of the methamphetamine. PSI ¶¶ 13, 14. The adjusted offense level was reduced by three points for acceptance of responsibility. PSI ¶¶ 20-21. Had Petitioner been convicted of the firearms charge in Count Four, dismissed as part of the Plea Agreement, the statutory penalty would have required a mandatory consecutive term of at least five years in prison. PSI ¶ 54. Neither Petitioner nor the Government filed any objections to the PSI. PSI Add.

On September 4, 2019, Judge Hall imposed a sentence of imprisonment of 120 months, five years supervised release, a $2,000 fine, and a $100 special assessment. CR 118-071, doc. nos. 50, 53. Counts One, Three, and Four were dismissed on motion of the United States. Id., doc. no. 53. In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### E. § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1) Counsel provided ineffective assistance at sentencing when he conceded Petitioner did not qualify for relief from the ten-year statutory minimum term of imprisonment pursuant to the safety valve provision in 18 U.SC. 3553(f)(2).

6

>    (2)   Counsel should have negotiated a more favorable plea deal that circumvented the ten-year statutory minimum term of imprisonment.

(See generally doc. nos. 1, 2.)

In support of Ground One, Petitioner alleges Mr. Chance informed him during plea negotiations of an understanding with the government that Petitioner "would receive the benefit of the safety valve." (Doc. no. 2, p. 2.) Petitioner explains, "The safety valve provision was not to be part of the plea agreement, but something that counsel and the government would argue to the court on the day of sentencing." (Id.) In support of this contention, Petitioner attached an email string between Mr. Chance and Ms. Tara Lyons, the prosecutor. (Id. at 8-9.) By email dated January 25, 2019, Mr. Chance stated, in relevant part, "I do feel that [Petitioner] qualifies for the newly revised safety valve so hopefully that will lower his range. Let me know your thoughts when you get a moment." (Id. at 8.) On January 29, 2019, Ms. Lyons replied, in pertinent part, "I agree with the likelihood of new safety valve application." (Id. at 9.)

In his reply brief, Petitioner clarified he "does not claim that anyone promised him a specific sentence." (Doc. no. 5, p. 1.) Instead, Petitioner alleges "he was told that he was 'eligible' for safety valve consideration" and "he was told that the Court would decide this issue." (Id. at 1-2) (emphasis in original). At sentencing, in contrast, Mr. Chance conceded the safety valve could not apply because a firearm was found in Petitioner's bedroom, and Petitioner contends "[t]his was the first time [he] learned that he was not going to receive the safety valve." (Doc. no. 2, p. 2.) For relief, Petitioner does not seek to withdraw his guilty plea. Instead, he "respectfully requests a resentencing in accordance with his correct guidelines range (87-108 months); or at the very least, and [sic] evidentiary hearing on the issue." (Id. at 5.)

7

## II.    DISCUSSION

### A.    No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 2, pp. 4-5; doc. no. 5, pp. 2-3.) Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as a matter of law, no evidentiary hearing is necessary, and Petitioner's request for one should be denied.

### B. Petitioner Cannot Satisfy the Burden of Proving Ineffective Assistance of Counsel Under Strickland v. Washington

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Id. at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do

with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.

> **1.  Ground One Fails Because Mr. Chance's Decision to Abandon the Longshot Safety Valve Argument Was Neither Deficient Nor Prejudicial**

Petitioner asserts Mr. Chance provided ineffective assistance at sentencing when he failed to argue Petitioner qualified for safety-valve relief from the mandatory minimum sentence of ten years. (Doc. no. 2, pp. 1-3.) The safety valve provision provides, in pertinent part, as follows:

> (a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
>      . . .
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
>      . . . .

U.S.S.G. § 5C1.2.

Because it is undisputed Petitioner possessed firearms in the same home, and even the same bedroom, as the methamphetamine, it was his burden to prove at sentencing, by a

11

preponderance of the evidence, the absence of a connection between the firearms and the offense.  United States v. Carillo-Ayala, 713 F.3d 82, 90 (11th Cir. 2013).  "The presence of a gun within a defendant's dominion and control during a drug trafficking offense ordinarily will suffice to show possession during and in relation to the offense and, therefore, that the defense possessed the firearm in connection with the offense."  United States v. Fernandez, 515 F. App'x 796, 797 (11th Cir. 2013) (*per curiam*).  Indeed, "[a] defendant seeking relief under the safety valve, despite his possession of a weapon found in proximity to drug-related items, will have a difficult task in showing that, even so, there is no connection with the drug offense so the safety valve applies."  Carillo-Ayala, 713 F.3d at 93.  This is because, "[w]hile other facts such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, "there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened."  Id. at 92.

As the undisputed testimony of SA Stewart established, task force officers found two chambered firearms in Petitioner's master bedroom, one of which had been reported stolen, (PSI ¶ 6), along with baggies of methamphetamine, cocaine, and marijuana.  Rule 11 Tr. 15-16.  Task force officers found the remainder of methamphetamine, cocaine, and marijuana throughout the same home.  Id. at 16.  Petitioner offers no evidence or argument suggesting, let alone establishing, he qualifies for application of the safety valve.

At bottom, it was reasonable for Mr. Chance to believe the safety valve argument had so little chance of success as to not merit the time and consideration of the Court.  His decision to forego a losing argument at sentencing was neither deficient nor prejudicial.  Notably, defendants with stronger arguments have not prevailed in the difficult task of negating the connection between firearms found at home and the drug offense.  See, e.g.,

United States v. Garcia, 633 F. App'x 760, 764 (11th Cir. 2015) (*per curiam*) (affirming finding safety valve relief did not apply to defendant who kept firearms inside home while dealing drugs in yard, reasoning defendant's testimony he kept guns only to protect family was not credible); United States v. Fernandez, 515 F. App'x 796, 797-98 (11th Cir. 2013) (*per curiam*) (affirming defendant ineligible for safety valve relief because firearms were in his "bedroom in close proximity to materials and items consistent with the manufacturing of methamphetamine," despite defendant's testimony he "possessed the firearms pursuant to his concealed weapon permit and his job as a bail bondsman . . . .").

### 2. Mr. Chance's Pre-Plea Mistaken Belief on Petitioner Qualifying for the Safety Valve Relief Does Not Render Petitioner's Guilty Plea Unknowing or Involuntary

Petitioner does not claim Mr. Chance's pre-plea mistake concerning applicability of the safety valve renders the guilty plea unknowing or involuntary.  Nor does Petitioner allege he would not have pleaded guilty and insisted on going to trial had he known the safety valve likely did not apply.  Furthermore, Petitioner does not ask to vacate his conviction but, instead, seeks a new sentencing hearing and a determination whether the safety valve applies. (Doc. no. 2, p. 5.)  For the sake of thoroughness, however, the Court will explain why Mr. Chance's mistake would not render Petitioner's guilty plea unknowing or involuntary.

Judge Hall informed Petitioner of the statutory minimum ten-year sentence, the statutory maximum of life imprisonment, the advisory nature of the sentencing guidelines, and his discretion as sentencing judge to impose any sentence not exceeding the statutory maximum.  Because of Judge Hall's thorough explanation, Petitioner cannot credibly claim ignorance or reliance on Mr. Chance's mistaken impression.  See, e.g., Cruz v. United States, 188 F. App'x 908, 914 (11th Cir. 2006) (*per curiam*) (finding movant failed to demonstrate

prejudice on basis "counsel misrepresented facts about the case and sentencing and coerced her into pleading guilty" because court informed her of "the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else."); United States v. Himick, 139 F. App'x 227, 228-29 (11th Cir. 2005) (*per curiam*) (stating "a defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence. . ."); United States v. Bradley, 905 F.2d 359, 360 (11th Cir. 1990) (*per curiam*) ("To the extent [petitioner] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [petitioner] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."); Stewart v. United States, No. CIV 107-CV-3045-TWT, 2009 WL 909547, at *10-11 (N.D. Ga. Apr. 2, 2009) (holding petitioner "did not suffer any consequential prejudice" even if counsel incorrectly informed him sentencing guidelines indicated he would receive a five-year prison sentence, because petitioner acknowledged at guilty plea hearings he understood the maximum sentence he faced and "stated that no one promised him a particular sentence in order to induce him to plead guilty").

### 3. Petitioner Does Not Contend, and There Is No Basis for Finding, the Safety Valve was a Term or Condition of His Agreement to Plead Guilty

In his reply brief, Petitioner states unequivocally he "does not claim that anyone promised him a specific sentence." (Doc. no. 5, p. 1.) Instead, Petitioner alleges "he was told that he was 'eligible' for safety valve consideration" and "he was told that the Court would decide this issue." (Id. at 2) (emphasis in original). There is, accordingly, no

14

allegation of the safety valve being a term and condition of Petitioner pleading guilty to Count Two.

Even if Petitioner made such an allegation, there is no basis for finding application of the safety valve was a term or condition of Petitioner's Plea Agreement. The email discussion between counsel contains no promises or assurances of Petitioner qualifying for safety valve relief and, instead, merely discusses the probabilities of the safety valve provision applying at sentencing. Mr. Chance expressed his belief Petitioner qualified, and Ms. Lyons agreed "with the likelihood of safety valve application." (Doc. no. 2, p. 8.) The Plea Agreement contained no such assurances or promises either, but instead explained "Defendant's guilty plea will subject him to a mandatory minimum sentence of 10 years imprisonment." Plea Agreement, p. 2. The Plea Agreement does not mention the safety valve provision, and instead provided "[n]o one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range." Id. Nor has Petitioner presented any evidence he would have qualified for safety valve relief. For these reasons, there is no allegation or evidence to suggest the safety valve was a term or condition of Defendant's agreement to plead guilty to Count Two.

### 4. Ground Two Fails Because of the Speculation Inherent in Claiming Mr. Chance Could Have Negotiated a More Favorable Plea Deal

Petitioner claims Mr. Chance should have negotiated a better plea deal circumventing the mandatory minimum sentence of ten years. (Doc. no. 2, p. 4.) Petitioner does not assert, absent a better deal, there is a reasonable probability he would have chosen to go to trial on all four counts. The benefits he received from his guilty plea were extensive. In exchange for his guilty plea to one count of a four-count indictment, Petitioner gained an acceptance of

responsibility reduction and an opportunity to cooperate and earn a § 5K1.1 reduction, as well as eliminated the possibility of a mandatory, five-year consecutive sentence for the § 924(c) charge. Plea Agreement, pp. 3-4. Additionally, because Petitioner took responsibility for his own criminal activity, the government dropped all charges against his wife. (Doc. no. 2, pp. 8-9; doc. no. 4, p. 13; doc. no. 5, p. 2.)

A bald assertion some sort of other, more favorable plea deal might have been possible fails to establish the requisite prejudice. Cummings v. United States, No. CV 112-224, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013) (Hall, C.J.) (noting after-the-fact assertion concerning possibility of more favorable plea deal insufficient to show prejudice); see also McNair v. United States, No. CV 118-068, 2019 WL 1497058, at *13 (S.D. Ga. Feb. 13, 2019), *adopted by*, McNair v. United States, No. CV 118-068, 2019 WL 1497034 (S.D. Ga. Apr. 4, 2019) (Hall, C.J.) (finding petitioner did not allege any facts associated with the plea negotiation process or why he would have received a more favorable deal but for counsel's alleged ineffective assistance); Freeman v. United States, 1:06–CR–0185–TWT–JFK, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011) ("All [m]ovant shows is that [he] would have preferred a more favorable plea agreement-such a showing could be made by almost anyone who has entered into a guilty plea."), *adopted sub nom by* United States v. Warner–Freeman, 2011 WL 2680509 (N.D. Ga. July 7, 2011); Guyadeen v. United States, Nos. 3:04-cv-1143-J-32MCR, 3:01-cr-160-J-32MCR, 2006 WL 1360894, at *2–3 (M.D. Fla. May 17, 2006) (finding no prejudice because, "even assuming [petitioner's] counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced"). As Petitioner cannot show prejudice, his Ground Two claim fails.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 16th day of October, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA